1  Laurence M. Rosen, Esq. (SBN 219683)
   THE ROSEN LAW FIRM, P.A.
2  355 South Grand Avenue, Suite 2450
3  Los Angeles, CA 90071
   Telephone: (213) 785-2610
4  Facsimile: (213) 226-4684
   Email: lrosen@rosenlegal.com
5
6  *Counsel for Plaintiff*

7  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**
8

| | |
|---|---|
| PETER KLEINMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | Case No: 3:19-cv-03605 |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| v. | JURY TRIAL DEMANDED |
| PIVOTAL SOFTWARE, INC.; ROBERT MEE; CYNTHIA GAYLOR; PAUL MARITZ; MICHAEL S. DELL; ZANE ROWE; EGON DURBAN; WILLIAM D. GREEN; MARCY S. KLEVORN; KHOZEMA Z. SHIPCHANDLER; MORGAN STANLEY & CO. LLC; GOLDMAN SACHS & CO. LLC; CITIGROUP GLOBAL MARKETS INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED.; BARCLAYS CAPITAL INC.; CREDIT SUISSE SECURITIES (USA) LLC; RBC CAPITAL MARKETS, LLC; UBS SECURITIES LLC; WELLS FARGO SECURITIES, LLC; KEYBANC CAPITAL MARKETS INC.; WILLIAM BLAIR & COMPANY, L.L.C.; MISCHLER FINANCIAL GROUP, INC.; SAMUEL A. RAMIREZ & COMPANY, INC.; SIEBERT CISNEROS SHANK & CO., L.L.C.; and WILLIAMS CAPITAL GROUP, L.P., | |
| Defendants. | |

Plaintiff Peter Kleinman, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges in this Complaint the following upon knowledge with respect to his own acts, and upon facts obtained through an investigation conducted by his counsel, which included, inter alia: (a) review and analysis of relevant filings made by Pivotal Software, Inc. ("Pivotal" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Defendants' public documents and press releases; and (c) information readily obtainable on the Internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their control.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of all persons and entities, other than Defendants, who purchased Pivotal securities pursuant and/or traceable to the Company's registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's initial public offering in April 2018 (the "IPO"), seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") (the "Class").

**JURISDICTION AND VENUE**

2. The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v).

4. Venue is proper in this Judicial District pursuant to Section 28 U.S.C. § 1391(b) as the alleged misleading public filings and press releases entered this district and the Company's headquarters are located in this district.

5. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Pivotal securities at artificially inflated prices pursuant and/or traceable to the Company's IPO and was damaged thereby.

7. Pivotal is a cloud based platform technology company. The Company is a Delaware corporation with principal executive offices located at 875 Howard Street, Fifth Floor, San Francisco, California 94103. Pivotal's securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "PVTL."

8. Defendant Robert Mee ("Mee") is the Company's Chief Executive Officer ("CEO") and held this position at the time of the IPO. Defendant Mee signed or authorized the signing and issuance of the Registration Statement.

9. Defendant Cynthia Gaylor ("Gaylor") is Pivotal's Chief Financial Officer ("CFO") and held this position at the time of the IPO. Defendant Gaylor signed or authorized the signing of the Registration Statement.

10. Defendant Paul Maritz ("Maritz") serves as the Chairman of the Board of Directors (the "Board") of Pivotal and held this position at the time of the IPO. Defendant Maritz signed or authorized the signing of the Registration Statement.

11. Defendant Michael S. Dell ("Dell") serves as a director of the Board and was a director at the time of Pivotal's IPO. Defendant Dell signed or authorized the signing of the Registration Statement.

12. Defendant Zane Rowe ("Rowe") serves as a director of the Board and was a director at the time of Pivotal's IPO. Defendant Rowe signed or authorized the signing of the Registration Statement.

13. Defendant Egon Durban ("Durban") serves as a director of the Board and was a director at the time of Pivotal's IPO. Defendant Durban signed or authorized the signing of the Registration Statement.

14. Defendant William D. Green ("Green") serves as a director of the Board and was a director at the time of Pivotal's IPO. Defendant Green signed or authorized the signing of the Registration Statement.

15. Defendant Marcy S. Klevorn ("Klevorn") serves as a director of the Board and was a director at the time of Pivotal's IPO. Defendant Klevorn signed or authorized the signing of the Registration Statement.

16. Defendant Khozema Z. Shipchandler ("Shipchandler") served as a director of the Board until September 2018 and was a director at the time of Pivotal's IPO. Defendant Shipchandler signed or authorized the signing of the Registration Statement.

17. Defendants Mee, Gaylor, Maritz, Dell, Rowe, Durban, Green, Klevorn, and Shipchandler are collectively referred to hereinafter as the "Individual Defendants."

18. Each of the Individual Defendants:

(a) Participated in the preparation of and signed (or authorized the signing of) the Registration Statement and/or an amendment thereto, and the issuance of the Registration Statement;

(b) directly participated in the management of the Company;

(c) was directly involved in the day-to-day operations of the Company at the highest levels;

(d) was privy to confidential proprietary information concerning the Company and its business and operations;

(e) was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

(g) approved or ratified these statements in violation of the federal securities laws.

19. Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

Class Action Complaint for Violation of the Federal Securities Laws

20. Defendant Goldman Sachs & Co. LLC ("Goldman") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

21. Defendant Citigroup Global Markets Inc. ("Citigroup") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

22. Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

23. Defendant Barclays Capital Inc. ("Barclays") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

24. Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

25. Defendant RBC Capital Markets, LLC ("RBC") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

26. Defendant UBS Securities LLC ("UBS") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

27. Defendant Wells Fargo Securities, LLC ("Wells Fargo") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

28. Defendant KeyBanc Capital Markets Inc. ("KeyBanc") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

29. Defendant William Blair & Company, L.L.C ("William Blair") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

30. Defendant Mischler Financial Group, Inc. ("Mischler") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

31. Defendant Samuel A. Ramirez & Company, Inc. ("Ramirez") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

32. Defendant Siebert Cisneros Shank & Co., L.L.C. ("Siebert") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

33. Defendant Williams Capital Group, L.P. ("Williams") is a financial services company that acted as an underwriter for the IPO, helping to draft and disseminate the Registration Statement and solicit investors to purchase Pivotal securities issued pursuant thereto.

34. Defendants Morgan Stanley, Goldman, Citigroup, Merrill Lynch, Barclays, Credit Suisse, RBC, UBS, Wells Fargo, KeyBanc, William Blair, Mischler, Ramirez, Sibert, and Williams are referred to herein as the "Underwriter Defendants."

35. Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a) The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the IPO and shared tens of millions of dollars in fees collectively. The Underwriter Defendants arranged a multi-city roadshow prior to the IPO during which they, and representatives from Pivotal, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b) The Underwriter Defendants also demanded and obtained an agreement from Pivotal and the Individual Defendants that Pivotal would indemnify and hold the Underwriter

Defendants harmless from any liability under the federal securities laws. They also made certain that Pivotal had purchased millions of dollars in directors' and officers' liability insurance.

(c) Representatives of the Underwriter Defendants also assisted Pivotal and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Pivotal, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, current corporate information concerning Pivotal's most up-to-date operational and financial results and prospects.

(d) In addition to availing themselves of virtually unlimited access to internal corporate documents, agents of the Underwriter Defendants met with Pivotal's lawyers, management and top executives and engaged in "drafting sessions." During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Pivotal securities would be sold; (iii) the language to be used in the Registration Statement; what disclosures about Pivotal would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Pivotal's management and top executives, the Underwriter Defendants knew of, or in the exercise of reasonable care should have known of, Pivotal's existing problems as detailed herein.

(e) The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

36. Pivotal is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

Class Action Complaint for Violation of the Federal Securities Laws

37.     Pivotal, the Individual Defendants, and the Underwriter Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**FALSE AND MISLEADING REGISTRATION STATEMENT**

38.     On December 15, 2017, Defendants filed with the SEC a confidential draft Registration Statement on Form S-1, which, following a series of amendments in response to SEC comments, including comments from the SEC emphasizing the importance of adequately disclosing material trends and risk factors, as required by Items 303 and 503 (defined below), would be used for the IPO.

39.     On or about April 18, 2018, Defendants filed a final amendment to the Registration Statement, which registered over 37 million Pivotal common stock shares for public sale, or 42,550,000 if the Underwriter Defendants exercised their over-allotment option. The SEC declared the Registration Statement effective on April 19, 2018. On or about April 20, 2018, Defendants filed the final prospectus for the IPO, which forms part of the Registration Statement. On April 24, 2018, the Company completed the IPO, which, upon the underwriters exercising their full overallotment option to purchase additional shares, issued a total of 42,550,000 shares priced to the public at $15.00 per share, generating over $638 million for Defendants.

40.     The Registration Statement contained untrue statements of material facts and omitted to state material facts both required by governing regulations and necessary to make the statements made therein not misleading. Foremost, the Registration Statement failed to disclose that Pivotal was already experiencing deferred sales, lengthening sales cycles, and consequently diminished growth as customers and industry sentiment shifted away from Pivotal's principal, yet outdated, Pivotal Application Service ("PAS") offering because it was incompatible with the industry-standard Kubernetes platform. At the same time, Pivotal's alternate Kubernetes-compatible Pivotal Container Service ("PKS") offering was severely limited and could not be applied to the full scope of large enterprise customers' needs. This disjointed product mix - on the one hand, an outdated primary PAS offering, incompatible with the industry standard; on the other, a limited secondary PKS add on that, although compatible with the industry standard, could only handle a narrow subset of enterprise

customer's needs – hamstrung Pivotal sales force responding to customers who were demanding a versatile, Kubemetes-compatible platform. It also rendered Pivotal's primary PAS offering increasingly obsolete, for Pivotal would be forced to reengineer its flagship PAS product from the ground up to be compatible with Kubemetes and thus competitive against large public cloud providers like Amazon, Microsoft, and Google. These undisclosed negative events, trends, and uncertainties rendered false and misleading Pivotal's reported financial and operational statements incorporated in the Registration Statement.

41.     Defendants were required to disclose this material information in the Registration Statement for at least three independent reasons. First, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), requires disclosure of any known events or uncertainties that at the time of the IPO had caused or were reasonably likely to materially impact Pivotal's future operating results and prospects. The undisclosed increasing competition, increasingly apparent obsolescence of its primary offerings, competitive disadvantages hampering its sales force, and consequently deferred sales, lengthening sales cycles, diminished growth, and other financial metrics, were likely to (and in fact did) materially and adversely affect Pivotal 's future results and prospects.

42.     Second, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503 ("Item 503"), required, in the "Risk Factors" section of the Registration Statement, a discussion of the most significant factors that make the offering risky or speculative and that each risk factor adequately describe the risk. The Registration Statement's discussion of risk factors did not even mention, much less adequately describe, the risk posed by the increasing competition, increasingly apparent obsolescence of its primary offerings, competitive disadvantages hampering its sales force, and consequently deferred sales, lengthening sales cycles, diminished growth, and other financial metrics, nor the likely and consequently materially adverse effects on the Company's future results, share price, and prospects.

43.     Third, Defendants' failure to disclose the then-increasing competition, increasingly apparent obsolescence of its primary offerings, competitive disadvantages hampering its sales force, and consequently deferred sales, lengthening sales cycles, diminished growth, and other financial metrics, much less the likely material effects these omissions would have on Pivotal 's share price, rendered false and misleading the Registration Statement's many references to known "risks" which

"*if*" occurring "*may*" or "*could*" materially affect the Company. (Emphasis added). These "risks" had already materialized at the time of the IPO.

44. Nevertheless, Defendants went forward with the IPO with the foregoing misrepresentations and omissions in the Registration Statement. With these misrepresentations and omissions, the IPO was extremely lucrative for Defendants, who raised more than $638 million in gross proceeds.

45. But as the truth gradually emerged, the price for Pivotal shares plummeted. For example, on June 4, 2019, after the market closed, Pivotal reported disappointing financial and operating results for the first quarter of 2019 and severely reduced full year guidance, which it vaguely attributed to "sales execution and a complex technology landscape." Later, during a conference call with analysts, Defendant Mee attributed the sale execution challenges to Pivotal's disjointed PAS/PKS offering and emphasized that Pivotal would thus be forced to reengineer its primary PAS on Kubernetes.

46. Analysts were quick to respond, calling Pivotal's quarter a "train wreck," characterizing the Company's operating results as "disastrous," and asserting that Pivotal's "management team does not have a handle on the underlying issues negatively impacting its sales cycles and the activity in the field."

47. On this news, Pivotal's stock price plummeted $7.65 per share, or over 41%, to close at $10.89 per share on June 5, 2019.

48. Pivotal's securities are currently trading around 24% below its IPO price.

49. As a result of Defendants' misconduct, investors were damaged.

**CLASS ACTION ALLEGATIONS**

50. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Pivotal securities in its IPO or purchased Pivotal securities thereafter in the stock market pursuant and/or traceable to the Company's Registration Statement issued in connection with the IPO and were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal

representatives, heirs, successors or assigns and any entity in which the officers and directors of the Company have or had a controlling interest.

51. The members of the Class are so numerous that joinder of all members is impracticable. There were 42,550,000 shares sold in the IPO. Since the IPO, the Company's securities have actively traded on NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Pivotal or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

53. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

54. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

55. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the Securities Act was violated by Defendants as alleged herein;

(b) Whether the Registration Statement were negligently prepared and contained materially misleading statements and/or omitted material information required to be stated therein;

(c) the extent to which members of the Class have sustained damages and the proper measure of damages

(d) A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

56. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**FIRST CLAIM**
**Violation of Section 11 of**
**The Securities Act Against All Defendants**

57. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

58. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Defendants.

59. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

60. Pivotal is the registrant for the IPO. Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

61. As issuer of the shares, Pivotal is strictly liable to Plaintiff and the Class for the misstatements and omissions.

62. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

63. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

64. Plaintiff acquired Pivotal shares pursuant and/or traceable to the Registration Statement for the IPO.

65. Plaintiff and the Class have sustained damages. The value of Pivotal securities has declined substantially subsequent to and due to Defendants' violations.

### SECOND CLAIM
### Violation of Section 12(a)(2) of
### The Securities Act Against All Defendants

66. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein.

67. This Count does not sound in fraud. Any proceeding allegations of fraud, fraudulent conduct, or improper motive are specifically excluded from this Count. Plaintiff does not allege that Defendants had scienter or fraudulent intent, which are not elements of this claim.

68. Defendants offered, sold and/or solicited a security, namely shares of Pivotal's securities by means of the IPO identified above, or were-controlling persons of Pivotal's or of those who offered and sold Pivotal securities. The Registration Statement contained untrue and/or misleading statements of material fact that the Defendants in the exercise of reasonable care should have known were false.

69. Defendants actively solicited the sale of Pivotal to serve their own financial interests.

70. At the time of purchase of Pivotal's securities, Plaintiff and other members of the Class did not know that the representations made to them by the Defendants in connection with the distribution of shares and the matters described above were untrue, and did not know the above described omitted material facts, were not disclosed.

71. As a result, Plaintiff and Class members are entitled to tender Pivotal they purchased and receive from Defendants the consideration paid for those shares with interest thereon, less the amount of any income received thereon, or damages resulting from Defendants' conduct.

72. Defendants are liable to Plaintiff and Class members pursuant to Section 12(a)(2) of the Securities Act, as seller of the securities in connection with the IPO.

73. This Action is brought within three years from the time that the securities upon this Count is brought were sold to the public, and within one year from the time when Plaintiff discovered or reasonably could have discovered the facts upon which this Count is based.

### THIRD CLAIM
### Violation of Section 15 of
### The Securities Act Against Individual Defendants

74. Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

75. This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

76. Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Pivotal within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause Pivotal to engage in the acts described herein.

77. Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

78. By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

b. Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: June 21, 2019

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/Laurence M. Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against Pivotal Software, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The Pivotal Software, Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

| | |
|---|---|
| First name: | Peter |
| Middle initial: | |
| Last name: | Kleinman |
| Address: | |
| City: | |
| State: | |
| Zip: | |
| Country: | |
| Facsimile: | |
| Phone: | |
| Email: | |



Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.
2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.
3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.
4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.
5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.
6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 03/28/2019 | 400 | 20.51 |

7. I have not served as a representative party on behalf of a class under the federal securities laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:       YES

**Certification for Peter Kleinman (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.        YES

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 06/20/2019